UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| LINDA SUE HADDIX, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 10-30-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| MICHAEL J. ASTRUE, Commissioner of | ) | **ORDER** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Painful as it is to say, this is a case where the ALJ appears to have done too much. When denying the plaintiff's second disability application, he might have held that the first application barred consideration of the second and that the new evidence did not justify reopening the whole case. Instead of simply doing this, however, the ALJ conducted a review of the evidence so thorough it almost seems he did, in fact, reopen the whole case. Yet if he did intend to reopen everything, it is unclear why he nonetheless said his predecessor's decision was closed and preclusive and, in some places, did explicitly treat it as closed and preclusive. The decision is too unclear to permit meaningful judicial review. Thus, it must be sent back for clarification.

### BACKGROUND

On September 16, 2006, ALJ Charles Arnold considered the plaintiff's first Social Security application, which claimed disability starting October 29, 2004. Tr. at 48. He acknowledged that the plaintiff suffers several "severe impairments"—borderline intellectual functioning, bursitis, and cervical degenerative disc disease. *Id.* at 50. But, noting the opinions

of examining physicians and a vocational expert, ALJ Arnold determined that the plaintiff still had the residual functional capacity to do a "limited" range of light-to-sedentary work, and that appropriate jobs were available in significant numbers. *Id.* at 52-53. He denied the claim.

Undeterred, the plaintiff filed a new application in May 2007 alleging a disability onset of September 19, 2006—just days after the date of her original denial. *Id.* at 9. She secured a hearing with ALJ Roger Reynolds. There, the plaintiff reiterated her earlier complaints—back pain, an injured shoulder, and nervousness around people. *Id.* at 26-28, 34. ALJ Reynolds denied her second claim.

He began his opinion by noting that the plaintiff had shown no change in condition since her first denial, and so he "adopt[ed] and incorporat[ed] . . . the recitation of the medical evidence, the claimant's hearing testimony, and the vocational expert's testimony contained in the prior [ALJ's] decision" under the administrative res judicata holding in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). Tr. at 9. On top of this, the ALJ also said there was no basis for reopening his predecessor's decision. *Id.* at 9. And yet the ALJ then conducted a thorough review of several physicians' inputs, the plaintiff's new testimony, and the evidence from the prior proceeding to determine that the plaintiff was capable of a "wide range of light and sedentary work." *Id.* at 15-17. Completing the decision, the ALJ "adopted" the testimony of a vocational expert from the plaintiff's first hearing and decided that appropriate jobs were available to the plaintiff in significant numbers. *Id.* at 18-19. The plaintiff now seeks review of the ALJ's decision.

DISCUSSION

Once he resolved to deny the plaintiff's application, the ALJ might have taken any one of three analytic paths. Despite his obligation to write a clear opinion allowing meaningful judicial review, *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 WL 96920, at *3 (6th Cir. Feb. 2, 1999); *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984); SSR 82-62, 1982 WL 31386, at *4 ("The rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion."), it is unclear which path the ALJ took. The Court will not "speculate" as to the ALJ's analysis. *Nash v. Sec. of Health and Human Servs.*, No. 94-5376, 1995 WL 363381, at*2 (6th Cir. June 15, 1995).

First, the ALJ might have decided that the 2006 denial simply barred the second application under the doctrine of administrative res judicata. The Sixth Circuit has held that a denial of benefits for one period can have a preclusive effect against another application for a later period where the claimant fails to show changed circumstances. *Casey v. Sec. of Health and Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993) (per curiam) (holding that where the Secretary already denied a claimant's application for one period, the claimant then must show that "her condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity"); *Priest v. Soc. Sec. Admin.*, 3 F. App'x 275, 276 (6th Cir. 2001) ("In order to be awarded benefits for her condition since that time, Priest must demonstrate that her condition has so worsened in comparison to her condition in September 1994 that she was unable to perform substantial gainful activity."); *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x

462, 463-64 (6th Cir. 2004). The Ninth Circuit, in agreement with the Sixth, calls this the "presumption of continuing non-disability." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).[1]

Yet it is unclear the ALJ applied res judicata here. He started out on the right track. Acknowledging the Sixth Circuit rule that a "subsequent ALJ is bound by the findings of a previous ALJ" absent changed circumstances, Tr. at 9 n.1, ALJ Reynolds said there was "no significant change in medical condition" in this case. And then, in one, and perhaps two, places, the ALJ seemed to follow faithfully the res judicata doctrine—explicitly adopting his predecessor's findings. *See id.* at 12, 17. But then things fell apart. In one of the places where the ALJ purported to adopt his predecessor's decision—the RFC assessment—the ALJ said (confusingly) he was doing so only because the "evidence of record, findings, and conclusions reached in the prior decision" supported the RFC, not because the earlier judgment was preclusive absent a change in circumstances. *Id.* at 17. He then dedicated nearly four single-spaced pages to analyzing the record in depth to decide the plaintiff's RFC for himself. *Id.* at 14-17. And on top of this, the ALJ then proceeded to adopt *testimony* from the first hearing, as opposed to his predecessor's ultimate *findings*, in the name of res judicata. *See, e.g., id.* at 17-18, 18-19; *Rogers v. Comm'r of Soc. Sec.*, No. 99-5650, 2000 WL 799332, at *6 (6th Cir. June 9, 2000) (holding that res judicata applies to final judgments between litigants, not to testimony by a vocational expert). This does not sound like a res judicata decision.

---

[1] The Court asked the parties to file supplemental briefing as to whether the Sixth Circuit would apply administrative res judicata to successive applications for later periods outside of the limited circumstances in *Drummond*. Given the holdings in *Casey* and *Priest*, it clearly would.

Second, the ALJ might have decided that there truly were "changed circumstances" permitting him to review evidence for the new period while leaving the ALJ's decision for the earlier period untouched. *See Drummond*, 126 F.3d at 842-43 (holding that administrative res judicata does not apply where the claimant can show "changed circumstances" between applications); *Casey*, 987 F.2d at 1233 (holding that res judicata does not apply when the claimant's condition deteriorates after an initial denial).

But it is unclear whether the ALJ did this either. Certainly, it would explain the ALJ's exhaustive review of all the new evidence concerning the plaintiff's residual functional capacity. Tr. at 14-17. And it might also explain why the ALJ added "secondary anxiety" to the plaintiff's list of "severe impairments" and determined that the plaintiff was now capable of a "wide," rather than "limited," range of light and sedentary work. *Id*. at 12, 17. But, ultimately, it is difficult to square this possibility with the ALJ's clear statement that the plaintiff suffered "no significant change in medical condition," his apparent review of evidence from the earlier proceedings, *id*. at 17, 18, and his repeated citations to the res judicata holding in *Drummond*, *id*. at 9, 12, 17.

Third, the ALJ might have decided that, while there were no "changed circumstances" and the new application was otherwise barred by the first, "new and material evidence" justified "de facto" reopening the first application and considering everything anew.[2] *See Crady v. Sec. of Health & Human Servs.*, 835 F.2d 617, 620 (6th Cir. 1987) ("It appears obvious that the ALJ

---

[2] The ALJ could also expressly reopen the prior decision under 20 C.F.R. § 404.987. But he did not claim to do so.

reopened the prior application, as he may do even though there is no express statement that he has done so."); *Wheeler v. Sec. of Health & Human Servs.*, No. 85-1757, 1986 WL 16116, at *1 (6th Cir. Aug. 8, 1986) ("Thus, the ALJ's determination that Plaintiff was not disabled on or before March 21, 1980 is binding under the doctrine of res judicata, since there is no new and material evidence warranting a reopening of the prior decision."); *Brewster v. Barnhart*, 145 F. App'x 542, 549 (6th Cir. 2005). Courts have held that an ALJ "de facto" reopens an earlier application when he reviews the "entire record" and reaches a decision on the merits of the claim. *See, e.g., Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003); *Tobak v. Apfel*, 195 F.3d 183, 186 (3d Cir. 1999).

Once more, it is unclear whether the ALJ did this. In his four-page RFC determination, and in his analysis of vocational expert testimony from the first hearing, the ALJ did seem to consider the "entire" record rather than conduct a limited review to decide whether reopening was warranted or whether there were changed circumstances. *See Sayegh v. Sec. of Health & Human Servs.*, No. 90-1470, 1991 WL 60965, at *2 (6th Cir. April; 22 1991) (holding ALJ and Appeals Council did not constructively reopen case by considering new evidence because they can consider new evidence "for the *limited purpose* of deciding whether a new claim was presented or whether prior application should be reopened") (emphasis added); *Rogerson v. Sec. of Health and Human Servs.*, 872 F.2d 24, 29 n. 5 (3d Cir. 1989) (same). And he did seem to reach a decision on the merits rather than simply hold that his hands were tied by the first decision. Consider these passages, for instance: "[T]he evidence of record in its entirety supports the finding that the claimant is able to perform a wide range of light and sedentary

work," Tr. at 17, and "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work," *id.* at 19. But, despite all this, the ALJ said directly that "there is no basis on which to reopen the claimant's prior application," *id.* at 9—an important disavowal to some courts. *See, e.g., Girard v. Chater*, 918 F. Supp. 42, 45 (D.R.I. 1996) (rejecting claim of constructive reopening in party because ALJ specifically refused to reopen). In the end, there is simply no telling which of these three paths the ALJ took.

The temptation is strong to disregard all of this confusion because the ALJ's opinion was so commendably thorough. Perhaps, one might say, the ALJ mistakenly believed that res judicata only barred review of the first decision, and so he limited himself to conducting a de novo review of the evidence presented with the second application. But this simply does not work. If the first decision was res judicata as to the second, then the two applications essentially merged into one. After all, the first decision would be res judicata because nothing had changed by the second. Considering the new evidence on the merits, therefore, would necessarily be a reconsideration of the merits of the earlier decision. If the ALJ did consider all the new evidence on the merits—rather than for the limited purpose of deciding whether the first application was closed and res judicata—then the ALJ did reopen the first application and expose it to judicial review. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 82 F. App'x 453, 454-55 (6th Cir. 2003) (holding that consideration of new evidence on the merits reopened earlier application).

The plaintiff lodged several other objections to the ALJ's decision, but it is difficult to analyze those claims without first knowing which of these three options the ALJ adopted. Most prominently, she complains that the ALJ's consideration of vocational expert testimony from the first proceeding deprived her of the chance to cross-examine the witness and was wrong insofar as the testimony was not in the official record. Did the ALJ really consider this testimony as a substantive part of his own independent analysis? Or did he merely intend to adopt his predecessor's conclusions which were, in turn, a repeat of the vocational expert's analysis? Pending clarification, the Court will reserve judgment on the plaintiff's objections.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)   The plaintiff's motion for summary judgment, R. 11, is **GRANTED** to the extent it seeks a remand for more reasoning.

(2)   The defendant's motion for summary judgment, R. 12, is **DENIED**.

(3)   The administrative decision of the defendant is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

(4)   **JUDGMENT** in favor of the plaintiff shall be entered contemporaneously with this opinion.

This the 12th day of November, 2010.



Signed By:
*Amul R. Thapar* AT
United States District Judge